IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES E. HOLLEY, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. AW-09-1160 |
| DTM CORPORATION, | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

Plaintiff Charles E. Holley ("Holley") brings this breach of employment contract, wrongful discharge, and retaliation action against his former employer, Defendant DTM Corporation ("DTM"). Pending before the Court are Defendant's Motion for Rule 11 and 28 U.S.C. § 1927 Sanctions (Doc. No. 16) and Defendant's Motion for Summary Judgment (Doc. No. 17). The Court has reviewed the entire record, as well as the pleadings and exhibits, and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons set forth below, the Court GRANTS Defendant's Motion for Summary Judgment (Doc. No. 17) and DENIES Defendant's Motion for Rule 11 and 28 U.S.C. § 1927 Sanctions (Doc. No. 16).

I.     **FACTUAL & PROCEDURAL BACKGROUND**

In March 2004 DTM, a company that provides armed security guards for U.S. government facilities, hired Plaintiff Holley as a security officer. DTM is a party to a Collective Bargaining Agreement ("CBA") with the Union of Protective Services Associations ("Union"), which represents DTM's security officers, and of which Plaintiff was a member.

Soon after Plaintiff began his employment he became concerned that DTM had not raised his or his fellow officers' hourly wages, and he felt that DTM erratically enforced disciplinary

1

policies. Mr. Holley wrote to a Congressman informing him that DTM underpaid its employees. In response to Mr. Holley's letter, on March 3, 2005, the Congressman wrote DTM's Chief Operations Officer, Margo Briggs, inquiring about DTM's payment of its security officers. On May 13, 2005, Ms. Briggs wrote an inter-office memorandum informing all security officers that their wages would be raised and that they would be paid retroactively for the past amount due. In a May 2005 article in *The Washington Afro-American*, Mr. Holley was quoted as saying DTM employees needed wage raises and describing the situation as "Black people ripping off other Blacks." In response to this statement Ms. Briggs submitted a letter to the newspaper in which she deemed that article slanderous and stated that she would seek legal action. The day after the publication of Ms. Briggs' response, on May 24, 2005, Captain Hughes, Mr. Holley's supervisor, recommended that Mr. Holley be terminated for reading recreationally while on duty.

In May 2005 Mr. Holley filed charges against DTM with the National Labor Relations Board ("NLRB"). By chance, Ms. Briggs saw him file the charge. At some point in May 2005 Ms. Briggs informed Plaintiff by phone that if he did not stop disparaging the company she would "put her lawyers on him," and also offered him money to quit his job. (Doc. No. 18, Ex. C at ¶ 4.) In July 2005 he amended his NLRB complaint. Also in May, June, and July 2005 he made internal complaints regarding the terms and conditions of his employment. He also complained to outside officials and agencies. In June 2005 he received the back-pay he had complained about and in July 2005 he withdrew his charges with the NLRB.

In November 2005 DTM granted Plaintiff medical leave under the Family and Medical Leave Act ("FMLA") after he was diagnosed with prostate cancer. Upon his return in January 2006, DTM denied his request that his assignments in the garage area be limited. On January 20, 2006, Plaintiff's new supervisor, Captain Massey, reprimanded him for not following the chain

2

of command, allegedly merely for complaining that he needed a new winter uniform. Additionally, Plaintiff's estranged wife at some point informed DTM that she had filed domestic violence charges against him. DTM then reported to the Commonwealth of Virginia Department of Criminal Services that Plaintiff had been convicted of domestic violence and requested that his firearms license be revoked, which it was, on March 20, 2006. Plaintiff submitted proof that he had not been convicted of domestic violence charges and had his firearms license re-instated on March 23, 2006.

On March 25, 2006, Captain Massey claimed that Plaintiff called him stupid and co-workers reported him to DTM headquarters for insubordination. By letter dated March 30, 2006, DTM informed Plaintiff that he was suspended for three days, from March 29, 2006, through March 31, 2006, and asked him to report to DTM headquarters with a Union representative, which he did. At that meeting, he refused to accept a position as an unarmed security guard and signed and dated two letters of resignation, which he was coerced into signing because Ms. Briggs told him he would not receive his final check if he did not sign the pre-written resignation letter.[1] On April 11, 2006, Plaintiff received a letter dated April 11, 2006, stating "DTM accepts your resignation as of today [March 31, 2006]. . . ." (Doc. No. 18, Ex. T.) On April 3, 2009, Plaintiff filed a three-count complaint in the Circuit Court for Prince George's County, Maryland alleging breach of employment contract (Count I), wrongful discharge (Count II), and retaliation (Count III). Defendant then removed the case to this Court. The parties conducted discovery, and Defendants filed the instant motion for summary judgment pursuant to Federal Rule of Civil

---

[1] The letter provided:
> I, Mr. Charles Holley, of sound mind resigned from the DTM, Corp., of my own free will and duly relieve NUPSA of any Responsibility dealing with this matter. . . .
> Sincerely,
> Charles Edward Holley. 3-31-06.

(Doc. No. 17, Ex. A.)

Procedure 56 on all counts and also filed a motion for sanctions against Plaintiff for failure to certify and investigate facts and refusal to withdraw the complaint.

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant DTM moves for summary judgment on all three claims—breach of employment contract (Count I), wrongful discharge (Count II), and retaliation (Count III)—on the ground that they are all preempted by federal statute and thus time-barred. The Court finds that the claim for breach of the CBA is preempted and time-barred, and that Plaintiff has not established a valid cause of action for abusive discharge or retaliation.

### a. Standard of Review

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998). Additionally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion

for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

### b. Analysis

The Court grants summary judgment to Defendant on all of Plaintiff's claims. It appears that Plaintiff has abandoned his breach of contract claim, and in any case, any claim for breach of the CBA is preempted by the LMRA and thus time-barred. Next, to the extent that Plaintiff bases his abusive discharge claim on DTM's violation of his rights under the First Amendment, the Court must dismiss the claim, as an abusive discharge claim against a private employer cannot be based on violation of constitutional rights that require state action. In any case, his abusive discharge claim would appear to be preempted by the NLRA. Third, Plaintiff fails to establish a prima facie case for retaliation—to the extent he bases the claim on a statute such as the FMLA, as he must, the claim is time-barred.

#### 1. Breach of Contract

As it appears that Plaintiff's breach of contract claim is based on a breach of the Collective Bargaining Agreement ("CBA") between DTM and Plaintiff's Union, the Court agrees with Defendant that the claim is preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U. S. C. § 185, and thus time-barred. Defendant contends that during deposition Plaintiff admitted that he did not have an employment contract with DTM, and rather that the only contract at issue is the CBA between DTM and the Union. A claim for breach of a CBA falls under § 301 of the LMRA. *See Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co.*, 369 U.S. 95, 104 (U.S. 1962) ("in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules"). Claims under § 301 of the LMRA must be filed within six months of the violation. *Del Costello*

*v. Int'l Bd. of Teamsters*, 462 U.S. 151, 154-155 (U.S. 1983) ("§ 10(b) [of the National Labor Relations Act, 29 U. S. C. § 160(b)] should be the applicable statute of limitations governing the suit" under § 301 of the LMRA, and that Section provides, "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board"). It is undisputed that Plaintiff's employment ended at the latest on April 11, 2006, and that Plaintiff's counsel did not file suit until April 3, 2009; thus if § 301 of the LMRA preempts the breach of contract claim, the claim is clearly time-barred.

Plaintiff does not address Defendant's arguments regarding preemption of the breach of contract claim, and fails to point to a contract at issue other than the CBA. Moreover, Plaintiff does not dispute that a claim for breach of a CBA is preempted by § 301 of the LMRA and thus must be brought within six months of the violation. As such, it appears that Plaintiff has abandoned his breach of contract claim. *See Mentch v. Eastern Sav. Bank, FSB*, 949 F. Supp. 1236, 1247 (D. Md. 1997) (finding that a plaintiff "abandoned her harassment claim by failing to address that claim in her opposition to [the defendant's] motion for summary judgment, or to offer clarification in response to [the defendant's] reply brief"). The Court will accordingly grant summary judgment to Defendant on the breach of contract claim, leaving only the wrongful discharge and retaliation claims.

### 2. Abusive Discharge

To make out a claim for abusive discharge under Maryland law, a Plaintiff must show: "(1) that the employee was discharged; (2) that the dismissal violated some clear mandate of public policy; and (3) that there is a nexus between the defendant and the decision to fire the employee." *Shapiro v. Massengill*, 661 A.2d 202, 213 (Md. 1995).[2] Defendant contends that the

---

[2] Though Plaintiff brings a claim for "wrongful discharge" the Court believes this claim is more properly styled as one for "abusive discharge."

NLRA preempts Plaintiff's abusive discharge claim because his claim is based on his allegation that he was terminated for behavior that is arguably protected under the NLRA—complaining about the terms and conditions of employment and about violations of the CBA and for filing charges at the NLRB. "The basic rule of the labor preemption doctrine is that, if the conduct that the state seeks to regulate is actually or arguably protected under § 7 of the National Labor Relations Act (NLRA) or [] § 8 of the NLRA, then otherwise applicable state law and procedures are ordinarily pre-empted." *Richardson v. Kruchko & Fries*, 966 F.2d 153 (4th Cir. 1992). Thus, Defendant contends, Plaintiff's abusive discharge claim is also time-barred by the six-month statute of limitations for filing charges based on violations of the NLRA. Plaintiff responds that the abusive discharge claim is not preempted because the case hinges on purely factual questions regarding Plaintiff's and Defendant's conduct and motivation, rather than on interpretation of the CBA. Plaintiff contends that he was terminated for asserting his First Amendment right "to report what he perceived to be improper and illegal conduct by Ms. Briggs and her company to the press and various government agencies and investigating bodies." (Doc. No. 18 at 12.) The Court finds that Plaintiff has not made out a claim for abusive discharge that is not preempted.

First, the Court finds that to the extent that Plaintiff claims that the specific mandates of public policy allegedly violated are those expressed in the free speech guarantee of the federal constitution, his abusive discharge claim cannot stand. As a preliminary matter, it does appear that Plaintiff bases his abusive discharge solely on a First Amendment violation, and not on any other violation. Plaintiff explains, "[t]here is ample evidence that Mr. Holley was terminated for no other reason than the simple fact that he dared to speak out to the press and public against Margo Briggs" (Doc. No. 18 at 17), and the factual questions he argues preclude summary

7

judgment pertain to his communication with outside authorities and Ms. Briggs' response.[3]

Under Maryland law employees of private employers do not have a cause of action for abusive discharge taken in violation of the public policy expressed in the First Amendment of the United State Constitution, as public employees do, because a claim for violation of the federal Constitution requires state action. "Constitutional guarantees have been uniformly interpreted to restrain and restrict only the conduct of the government vis-a-vis private individuals; in the absence of state action there can be no violation of constitutional rights." *Miller v. Fairchild Indus.*, 629 A.2d 1293, 1299 (Md. Ct. Spec. App. 1993). Plaintiff's reliance on *Finch v. Holladay-Tyler Printing, Inc.*, 586 A.2d 1275, 1280 (Md. 1991), is misplaced because that case, in relevant part, merely described another case, *DeBleecker v. Montgomery County*, 438 A.2d 1348, 1352-53 (Md. 1982), in which the court held that a plaintiff who was a public employee could not be legally terminated for exercising constitutional rights.

The Court does not believe that Plaintiff has adequately identified any other violation of public policy, and in any case, Defendant shows that the other possible bases for the claim are preempted. Though Plaintiff appears to have abandoned any argument that the violation of public policy pertained to Plaintiff's complaints regarding the terms and conditions of employment, violation of CBA, and charges with the NLRB, as he does not address these arguments in his opposition memorandum, to the extent that Plaintiff bases his abusive termination claim on these events, the Court believes the claims are preempted by Section 8(a) of the NLRA. 29 USC § 158 ("It shall be an unfair labor practice for an employer—(1) to interfere with, restrain, or coerce

---

[3] The events which Plaintiff contends carry factual questions are: (1) Mr. Holley wrote a complaint letter to his Congressman regarding DTM's failure to raise the security guards' pay, which prompted the Congressman to write to Ms. Briggs about the pay, which led to Ms. Briggs increasing the pay and providing retroactive pay; (2) Mr. Holley's criticism of Ms. Briggs' management of DTM appeared in an African-American newspaper and she expressed outrage in response; (3) After Mr. Holley filed an NLRB charge, Ms. Briggs harassed him until she had a viable reason to terminate him by requiring him to maintain a standing post after he returned from medical leave, and finally terminating him for allegedly calling an officer stupid.

8

employees in the exercise of the rights guaranteed in section 7 . . . (4) to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this Act"). Additionally, any claims that depend on interpretation of the CBA are preempted by § 301 of the LMRA. "[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles -- necessarily uniform throughout the Nation -- must be employed to resolve the dispute." *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 405-406 (1988). Plaintiff does not dispute Defendant's argument that Plaintiff's complaints regarding the terms and conditions of employment were governed by the CBA and thus depend on an interpretation of the CBA. As it does not appear that Plaintiff has identified another violation of public policy, the Court finds that Plaintiff has failed to establish an element of the prima facie case of abusive discharge, and thus grants Defendant summary judgment on this claim.

### 3. Retaliation

The Court believes that Plaintiff has not made out a claim of retaliation. First, the Court observes that it is unaware of any cause of action for "retaliation" under Maryland common law. *Davidson-Nadwodny v. Wal-Mart Assocs.*, No. CCB-07-2595, 2008 U.S. Dist. LEXIS 45633, at *8 (D. Md. June 3, 2008) ("Because there do not appear to be viable Maryland common law claims for sexual harassment and retaliation, the court will construe these counts as having been brought under Title VII of the Civil Rights Act of 1964.") The Court agrees with Defendant that the plaintiff's claim for retaliation in the case upon which this Plaintiff here relies, *Magee v. Dansources Tech. Servs.*, 769 A.2d 231, 252 (Md. Ct. Spec. App. 2001), was based on retaliation for protected activities under Title VII and the Montgomery County Code, Art. I, Chapter 27. *See*

9

*id.* ("To plead retaliation . . . the plaintiff must allege that (1) she engaged in statutorily protected expression or activity; (2) she suffered an adverse action by her employer; and (3) there is a causal link between the protected expression and the adverse action.") (internal quotation marks and citations omitted). Plaintiff explains that he is alleging retaliation for exercise of his First Amendment right "to report what he perceived to be improper and illegal conduct by Ms. Biggs and her company to the press and various government agencies and investigating bodies," in the form of retaliation "when he was diagnosed with prostate cancer and requested certain accommodations regarding leave and security posting when he returned from leave." (Doc. No. 18 at 12.) The Court finds that such a claim cannot stand as DTM is a private employer.

First, to the extent that Plaintiff's claim here is the same as his abusive discharge claim, the Court has already explained above why it cannot proceed.[4] Additionally, it appears Plaintiff has abandoned any claim of retaliation under the FMLA as he does not respond to Defendant's arguments regarding this claim. In any case, the Court agrees with Defendant that if Plaintiff brings his retaliation claim under the FMLA, it is time-barred as it had to be brought within two years of the violation. 29 U.S.C. § 2617(c)(1) ("an action may be brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought"). Defendant also contends that the FMLA does not require a supervisor to accommodate medical restrictions or to transfer an employee to an easier post upon the employee's return from medical leave, and thus that Plaintiff's claim that his supervisor violated the FMLA by failing to accommodate his medical restrictions and failing to transfer him to an easier post upon his return from surgery does not constitute an FMLA violation. As the Court finds the other bases for dismissing the claim sufficient, the Court will not address this argument. In sum, as Plaintiff has not alleged a protected activity under any statute, the Court cannot allow

---

[4] Abusive discharge is referred to, alternatively, as retaliatory discharge. *See Finch*, 586 A.2d at 1280.

this claim to proceed, and thus does not address the question of whether the refusal to re-position him constituted an adverse employment action.

### III. Defendant's Motion for Rule 11 Sanctions and 28 USC § 1927 Sanctions

Defendant moves for sanctions pursuant to Federal Rule of Civil Procedure 11 and for attorneys' fees expended in defending the action and filing the motion for sanctions against Plaintiff Charles E. Holley and his attorneys Michael Carithers, Jr., Esq. of the Law Offices of Michael Carithers, LLC and Neal M. Janey Esq. Defendant argues that Plaintiff and Plaintiff's counsel violated Rule 11 by not reasonably investigating the facts and applicable law before filing the Complaint and Response in Opposition to Defendant's Motion for Summary Judgment. Additionally, Defendant argues that Plaintiff's counsel violated 28 U.S.C. § 1927 by pursuing the case after discovery revealed that there was no factual or legal basis for any of the claims. Plaintiff responds that he acted in good faith throughout the litigation and cannot be responsible for the claims in the Complaint as it was filed in state court. The Court believes that Plaintiff had some reasonable basis for bringing the claims and continuing to pursue the claims and thus denies Defendant's request for sanctions and attorneys' fees.

First, the Court does not believe this is a case that warrants Rule 11 sanctions against Plaintiff. Rule 11 of the Federal Rules of Civil Procedure provides that by filing a pleading or written motion, an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances. . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P 11(b). Defendant contends that Plaintiff's responses in deposition to Defendant's counsel's questions regarding the basis for his claims indicate Plaintiff had no valid reason for bringing the

suit. The Court believes, however, that as Plaintiff is not an attorney and is likely unfamiliar with the legal meaning of the questions Defendant's counsel presented, the Court should not base its decision regarding sanctions on these responses. Additionally, Defendant partially bases this Motion for Sanctions on its argument that Plaintiff's state law claims would have also been time-barred by Maryland's three-year statute of limitations because Plaintiff's employment ended on March 31, 2006. The Court, however, believes that Plaintiff has presented a plausible argument that his termination date was April 11, 2006, as he received a letter with that date stating that DTM accepted his resignation. Though the text of the letter stated that the date of termination was March 31, 2006, Plaintiff at least had a cognizable argument that the date of termination was really the date of the letter. Finally, the Court, like Defendant, is concerned by the apparent disjuncture between Plaintiff's Complaint and the arguments Plaintiff made in his opposition to Defendant's motion for summary judgment. Specifically it was not apparent from the face of the Complaint that the abusive discharge and retaliation claims were based on alleged First Amendment violations. Despite Defendant's arguments that Plaintiff had no valid argument regarding any claim, the Court finds that the facts of the case provided Plaintiff with some reasonable basis for believing he had valid claims, however. While the Court did not agree with the merits of Plaintiff's arguments, the Court believes that Plaintiff had some reasonable basis for pursuing his claim.

Nor does the Court believe that an award of attorneys' fees to Defendant under 28 U.S.C. § 1927 is appropriate in this case as Plaintiff did not unreasonably multiply proceedings in this case and had some basis for pursuing his claims. Under 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by

the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "The unambiguous text of § 1927 aims only at attorneys who multiply proceedings. It 'does not distinguish between winners and losers, or between plaintiffs and defendants. . . .' Rather, this provision 'is concerned only with limiting the abuse of court processes.'" *DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 762 (1980)). Though Defendant claims that Plaintiff should be penalized for failing to voluntarily dismiss his claims, the Court does not agree with this argument, and will not award Defendant attorney's fees under 28 U.S.C. § 1927. As such the Court will not sanction Plaintiff for bringing or pursuing the case.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment, and denies Defendant's Motion for Rule 11 and 28 U.S.C. § 1927 Sanctions.

| August 13, 2010 | /s/ |
|---|---|
| Date | Alexander Williams, Jr. |
| | United States District Judge |